[No. D000706. Fourth Dist., Div. One. Sept. 24, 1984.]

SOUTH COAST NEWSPAPERS, INC., Plaintiff and Appellant, v. CITY OF OCEANSIDE, Defendant and Respondent.

262

**COUNSEL**

Swirsky & Sauer and W.N. Sauer, Jr., for Plaintiff and Appellant.

Robert G. Steiner, Gregory D. Roper, Luce, Forward, Hamilton & Scripps, Musick, Peeler & Garrett, Stephen G. Contopulos and Anthony Russo, as Amici Curiae on behalf of Plaintiff and Appellant.

Charles R. Revlett, City Attorney, Warren B. Diven and Amy Greyson, Assistant City Attorneys, Pamela K. Klahn, Deputy City Attorney, and Suuzen Ty Anderson for Defendant and Respondent.

**OPINION**

**STANIFORTH, Acting P. J.**—This appeal questions denial of South Coast Newspapers, Inc.'s (South Coast) (the public's) right to inspect or receive a copy of the police report of an investigation undertaken by an Oceanside police officer in response to oral complaints from Oceanside residents a high school principal had failed to report an incident of child abuse. The trial court declared the report was statutorily protected from disclosure no matter its contents. The court also refused to inspect the report *in camera*.

We hold South Coast (the public) is entitled, pursuant to the California Public Records Act (CPRA), Government Code section 6250 et seq.,[1] and *American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d

---

[1] All statutory references are to the Government Code unless otherwise specified.

440 [186 Cal.Rptr. 235, 651 P.2d 822], to receive a copy of the report upon request and after the following trial court determinations: (1) no confidential sources will be revealed as a result of the report's release; (2) disclosure will not interfere with enforcement proceedings; (3) no person will be deprived of a fair trial; (4) release of the report will not constitute an unwarranted invasion of personal privacy; (5) secret police investigative techniques or procedures will not be revealed; or (6) the life or physical safety of law enforcement personnel will not be endangered. We reverse and remand for a forthwith *in camera* inspection and disclosure of the report or parts thereof, or an accurate edited summary, unless the court finds disclosure will result in an invasion of statutorily protected areas of information. (Gov. Code, § 6254, subd. (f).)[2]

## FACTS

South Coast owns and operates the Blade Tribune, an Oceanside, California, newspaper. In early 1982, South Coast learned the City of Oceanside

---

[2]Government Code section 6254, subdivision (f), provides:

"*Except as provided in Section 6254.7 nothing in this chapter shall be construed to require disclosure of records that are any of the following*:

" . . . . . . . . . . . . . . . . . . . . .

"(f) Records of complaints to or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any such investigatory or security files compiled by any other state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes, except that state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses *other than confidential informants* to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident caused by arson, burglary, fire, explosion, larceny, robbery, vandalism, vehicle theft, or a crime of violence as defined by subdivision (b) of Section 13960, *unless the disclosure would endanger the safety of a witness or other person involved in the investigation, or unless disclosure would endanger the successful completion of the investigation or a related investigation; provided, however, that nothing herein shall require the disclosure of that portion of those investigative files which reflect the analysis or conclusions of the investigating officer.*

"Other provisions of this subdivision notwithstanding, state and local law enforcement agencies shall make public the following information, *except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation*:

" . . . . . . . . . . . . . . . . . . . . .

"(2) The time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent such information regarding crimes alleged or committed or any other incident investigated

Police Department had prepared a report during the course of its investigation of the principal of Oceanside High School for his alleged failure to report an incident of child abuse. South Coast requested the City of Oceanside (the City) provide it with a copy of the report.

The history of the report is: The City's police department had received a complaint from a minor concerning alleged illegal sexual activity by the local high school band director with female students. During the course of his investigation into the allegations against the band director, Sergeant C. C. Saunders, the supervising investigating officer, became aware of information provided by other investigating officers which led him to believe Joseph Graybeal, the high school principal, may have had prior knowledge of the band director's activities but failed to report the activities to the police department.

Saunders informed his superiors of the information he had received about Graybeal. Upon instructions from the chief of police, Sanders prepared an investigative report regarding the principal's alleged failure to report an incident of child abuse. The report was submitted to the district attorney's office for review. The district attorney declined to prosecute Graybeal for violation of Penal Code section 11172 (failure to report an instance of child abuse which the person knows or reasonably should know to exist).

The City refused to release a copy of the report or to allow South Coast to review it on the ground section 6254, subdivision (f), exempts the report from disclosure. On September 24, 1982, South Coast filed an action for declaratory relief in the superior court of San Diego County. South Coast sought a judicial declaration it was entitled to inspect or receive a copy of the police report.

Upon hearing before the trial court, South Coast requested the City disclose, at a minimum, all information in the report which section 6254, subdivision (f)(2), directs must be disclosed. South Coast, however, did not abandon its argument it was also entitled to a copy of the report. The court then continued the case in order to give the City an opportunity to respond to South Coast's request. Nine days later (Nov. 12, 1982) the City complied with South Coast's request for information delineated in section 6254, subdivision (f)(2). South Coast then filed an amended petition for declaratory

is recorded, the time, date and location of occurrence, the time and date of the report, the name, age and current address of the victim, except that the address of the victim of any crime defined by Section 261, 264, 264.1, 273a, 273d, 286, 288, 288a, or 289 of the Penal Code shall not be disclosed, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property or weapons involved." (Italics added.)

relief. South Coast *still* sought a declaration it was entitled to inspect or receive a copy of the report, and alternatively requested a determination the City had failed to satisfy the disclosure requirements of section 6254, subdivision (f)(2).

At the hearing on the amended petition (Dec. 3, 1982), the trial court ruled South Coast had already received more information regarding the Graybeal investigation than it was entitled to; the court reasoned the section 6254, subdivision (f)(2), information disclosure directive is triggered only when a formal, written complaint is filed with a police department. The court also ruled section 6254, subdivision (f), "clearly exempts from the Public Record Act records of complaints to or investigations conducted by any state or local police agency." Finally, the court refused to conduct an *in camera* inspection of the Graybeal report pursuant to section 6259,[3] on the ground such inspection was "not necessary."

DISCUSSION

I

Section 6254, subdivision (f), contains a general exemption from disclosure of "[r]ecords of complaints to or investigations conducted by . . . any state or local police agency . . . ." The trial court ruled this exemption absolute, suggested a public agency is never obligated to produce investigatory reports. In so doing, the trial court failed to consider the history of the CPRA in general or the investigatory records exemption of section 6254, subdivision (f), in particular.

█ █ The CPRA was modeled on the federal Freedom of Information Act (FOIA), enacted in 1967. As the appeal court noted in *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 772 [192 Cal.Rptr. 415]:

"The [CPRA] . . . can draw on its federal counterpart [the FOIA] for judicial construction and legislative history. [Citations.] This resource be-

---

[3]Government Code section 6259 provides in pertinent part: "Whenever it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he should not do so. The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and such oral argument and additional evidence as the court may allow. . . ."

comes a useful tool, in view of the lack of California cases construing the Act. Moreover, the [CPRA], like the FOIA, reflects a general policy of disclosure that can only be accomplished by narrow construction of the statutory exemptions. [Citation.]" (Fn. omitted.)

On its enactment in 1967, the FOIA contained a disclosure exemption for "investigatory records compiled for law enforcement purposes." (Former 5 U.S.C. § 552(b)(7).) The CPRA, on its 1968 passage, contained a similar exemption for: "records of complaints to or investigations conducted by, or records of intelligence information or security procedures of . . . any state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes . . . ." (Stats. 1968, ch. 1473, § 39, p. 2947; former § 6254, subd. (f).) After a series of restrictive federal court decisions held all documents in a law enforcement investigatory file were exempt from FOIA disclosure requirements, Congress amended the FOIA so that investigatory records compiled for law enforcement purposes were exempt, but only to the extent production of the records would: "(A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . . ." (5 U.S.C., § 552(b)(7).) These FOIA amendments simply "reinstat[ed] the scope of the [investigatory file] exemption as intended in the original act (see *Climax Molybdenum Co.* v. *N.L.R.B., supra,* [10th Cir. 1976] 539 F.2d 63, 64) . . . ." (*American Civil Liberties Union Foundation, supra,* 32 Cal.3d 440, 449.)

 In discussing the CPRA, the Supreme Court in *American Civil Liberties Union Foundation* v. *Deukmejian, supra,* noted the CPRA was modeled on the FOIA and ruled the FOIA and its amendments should thus be used to construe the CPRA. (32 Cal.3d 440, 447.) In light of the FOIA and its amendments, the Supreme Court concluded despite section 6254, subdivision (f)'s, plain language, its investigatory records exemption is *not* an absolute exemption: "Such a broad exemption would in essence resurrect the federal judicial doctrine which Congress repudiated in 1974, and *which was never part of California law.* It would undercut the California decisions which in some circumstances limit the exemption of subdivision (f) to cases involving concrete and definite enforcement prospects. And most important,

it would effectively exclude the law enforcement function of state and local governments from any public scrutiny under the California Act, a result inconsistent with its fundamental purpose.

"$\,$. . . . . . . . . . . . . . . . . . . . . .

". . . We recognize, of course, that California has not enacted any amendments to the Act comparable to the 1974 federal amendments [limiting the investigatory records exemption], but then the California Legislature faced no overly restrictive court decisions such as those which impelled the federal amendments. As we have explained, the 1974 federal amendments were intended to restate and clarify the original purpose of the federal act, and since that purpose—public access to records except where access must be limited to protect privacy or confidentiality—corresponds to the purpose of the California Act, *we believe the two statutes should receive a parallel construction.*" (*American Civil Liberties Union Foundation, supra,* 32 Cal.3d at pp. 449-451; italics added; fn. omitted.)

██ The City contends the FOIA case is an inappropriate guide to the construction of section 6254, subdivision (f), because the 1982 amendments to the CPRA subdivision, commonly known as the Chapter 83 amendments, enacted as subdivisions (1) and (2) of section 6254, subdivision (f), significantly altered the California statute so that the purpose and design of the subdivision, and its FOIA counterpart, 5 United States Code section 552(b)(7), are now disparate.

The City misreads the Chapter 83 amendments. Their effect is simply to extend public access to information contained in agency records which are themselves exempted from disclosure by section 6254, subdivision (f). The amendments are in keeping with the original, shared purpose of the CPRA and FOIA to provide public access to government information. That the subsection before us has been amended does not suggest the FOIA, in its amended form, should not be used to construe the present CPRA subsection.

██ The record below suggests the section 6254, subdivision (f), exemption from disclosure, as interpreted in light of the FOIA and its amendments, is inapplicable to the report at issue. The drafter of the report, Sergeant Saunders, testified disclosure of the report will not interfere with enforcement proceedings or deprive any person of a fair trial or impartial adjudication, because no enforcement proceedings against Graybeal or the band director are pending or contemplated. (5 U.S.C. § 552(b)(7)(A)-(B).) He also informed the court disclosure will not reveal secret police investigative techniques and procedures or endanger the life or physical safety of

law enforcement personnel. The record also suggests disclosure will not reveal the identity of a confidential source or confidential information furnished only by the confidential source. (5 U.S.C. § 552(b)(7)(D).) Finally, it appears disclosure will not constitute an unwarranted invasion of personal privacy because South Coast has specifically requested that identifying information about all implicated minors be deleted before South Coast's inspection of the report, and Graybeal clearly is a public figure, as the City grants. (5 U.S.C. § 552(b)(7)(C).) We hesitate to conclude even on the basis of the testimony of the report's author that the report by law must be disclosed. We therefore direct the trial court to review the report *in camera* to determine as the Legislature had directed if the report is exempt or nonexempt in light of the foregoing discussion and release nonexempt materials to the newspaper. ■ Where matters subject to disclosure are interwoven textually with nondisclosable matters, the court may accurately summarize, edit or paraphrase the report to the end that the legislative objective of disclosure of nonprohibited matters be achieved.

II

■ The trial court ruled section 6254, subdivision (f)(2), limits the City's duty to provide information in the report at issue to the public to those circumstances when the report is the result of a *formal, written* complaint made by a *citizen* to a police department. Here, Sergeant Saunders' investigation revealed Graybeal may possibly have violated Penal Code section 11166. A crime incident report and a continuation report concerning Graybeal were prepared by Saunders after he received instructions to do so from the Oceanside Police Department. The complaint here was internally generated rather than externally generated.

By its terms, section 6254, subdivision (f)(2), requires disclosure of information in investigatory files "to the extent such information regarding crimes alleged or committed *or any other incident investigated* is recorded. . . ." (Italics added.) The investigation by Saunders into Graybeal's activities was recorded by Saunders. Therefore, the statute requires disclosure of specific information about Saunders' investigation. If the language of section 6254, subdivision (f)(2), is in any way ambiguous, it should be resolved in favor of the legislative intent of the CPRA to maximize disclosure of the conduct of governmental operations. (*American Civil Liberties Union Foundation, supra,* 32 Cal.3d 440, 456.) ■ As the appeal court in *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 651 [117 Cal.Rptr. 106], stated: "Statutory ambiguities should be resolved to promote the legislative objective exhibited by the entire enactment."

 The City's interpretation of section 6254, subdivision (f)(2), leads to an incongruous result. A complaint made by a citizen about an incident would be subject to disclosure, while that same incident, when discovered by a police officer and written up by him or her, would not be. As a result, a whole class of investigations for which disclosure would undoubtedly be required if a citizen complained, would avoid the mandated disclosure under section 6254, subdivision (f)(2), merely because the "complaining party" happened to be a police officer.

There is no coherent policy reason for distinguishing between types of complaints or refusing to disclose information concerning an incident such as this one. A complaint originating within the Oceanside Police Department is not inherently less disclosable or less meritorious than a citizen's complaint. If a distinction could be made, it would be that such a complaint is more likely to be meritorious and therefore more properly disclosable. The trial court erred in ruling to the contrary. The court, on remand, is directed to determine if the City's response to South Coast's request for information pursuant to section 6254, subdivision (f)(2), complied with the statutory directive.

Reversed and remanded for trial court proceedings consistent with this opinion to be conducted forthwith.

Wiener, J., and Duffy, J.,* concurred.

A petition for a rehearing was denied October 15, 1984, and respondent's petition for a hearing by the Supreme Court was denied December 13, 1984. Lucas, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.