[No. A032965. First Dist., Div. One. Dec. 16, 1986.]

CITY OF SANTA ROSA, Plaintiff and Appellant, v.
PRESS DEMOCRAT et al., Defendants and Respondents.

**COUNSEL**

Rene Auguste Chouteau, City Attorney, Bruce Leavitt and Brien J. Farrell, Assistant City Attorneys, and Suzanne C. Rawlings, Deputy City Attorney, for Plaintiff and Appellant.

Robert J. Faux, Ryersen, Comstock & Faux, Robert Y. Bell and Kenneth A. Richieri for Defendants and Respondents.

**OPINION**

**RACANELLI, P. J.**—In this appeal we confront the novel question whether a city may maintain an action for declaratory relief to determine its obligation to disclose the contents of a police report in response to a request by a local newspaper for disclosure under the California Public Records Act. (Gov. Code, § 6250 et seq.[1]) We will conclude that the trial court acted properly in sustaining the demurrer and dismissing the action.

*Procedural Background*

■    Since the appeal arises from the sustaining of a demurrer without leave to amend, we consider only the properly pleaded factual allegations of the complaint as true. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

Cal.Rptr. 601, 487 P.2d 1241]; *Darr* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

We synthesize the material allegations contained in the city's complaint.

On May 23, 1985, the Police Department of the City of Santa Rosa (City) investigated a complaint of sexual intercourse lodged against a Santa Rosa High School teacher involving a female minor. That individual was subsequently arrested but not formally charged.[2] However, the police department prepared a written report of its investigation.

On May 24, 1985, the City issued a press release which revealed the nature of the complaint and the fact of the teacher's arrest.[3]

On May 29, The Press Democrat, a daily newspaper published in Santa Rosa, formally requested release of the police report "pursuant to our rights under the California Public Records Act" (hereafter CPRA or Act).

The City responded to that request by filing a complaint for declaratory relief against The Press Democrat, the teacher, the unnamed female victim and the New York Times Company, owner of the local newspaper.

It was further alleged that the City believed that the police report was exempt from disclosure pursuant to section 6254, subdivisions (f) and (k), and Evidence Code section 1040 and that disclosure was against the public interest because the juvenile victim could be discouraged from testifying and because of the possible violation of the constitutional right of privacy of the teacher and minor victim, both of whom objected to disclosure of the report.

The complaint also requested an order sealing the report pending judicial resolution of the dispute. On June 4, 1985, the superior court granted the City's request to seal the report, but declined its companion request for an order prohibiting public disclosure of the report.

On August 2, 1985, The Press Democrat demurred to the complaint on the grounds that the CPRA provided the exclusive means to evaluate public information requests and that the court had no jurisdiction to decide the

---

[2]In view of such official action, we will refer to the accused teacher anonymously.

[3]The press release attached as an exhibit stated in essence that on May 23, 1985, a complaint was filed with the Santa Rosa Police Department regarding an alleged sexual assault on a 15-year-old resident (violation of section 261.5 of the California Penal Code); that as a result of the investigation, Santa Rosa police arrested the 41-year-old teacher on suspicion of the charge of unlawful intercourse with a minor.

declaratory action initiated by the City; further, that the City failed to exhaust its administrative remedies and that no actual controversy existed since the City had not acted on its request.

On September 19, 1985, the superior court filed its order and judgment sustaining the demurrer and dismissing the complaint solely as to The Press Democrat but permitting the report to remain sealed. This appeal ensued.

### Contentions

The City's principal contention on appeal focuses upon the important interests implicated by the requested disclosure which, it argues, require judicial intervention in order to determine the appropriate nature and scope of permissible disclosure.[4] Opposing respondents' contrary argument, City contends that the trial court possesses jurisdiction to adjudicate the issues at stake: 1) under the theory of "reverse FOIA" established by federal courts in preventing disclosure in cases involving the comparable Freedom of Information Act (FOIA) (5 U.S.C. § 552); or 2) by its initiation of a conventional declaratory relief action. For reasons which we discuss, neither avenue is available to City in its attempt to predetermine questions of disclosure arising from the CPRA.

### Discussion

The CPRA, modeled on the federal FOIA, reflects a general policy of disclosure of public records and information subject to narrowly drawn statutory exemptions. (*CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 651-652 [230 Cal.Rptr. 362, 725 P.2d 470]; *American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440, 447 [186 Cal.Rptr. 253, 651 P.2d 822]; *South Coast Newspapers, Inc.* v. *City of Oceanside, supra,* 160 Cal.App.3d 261, 267-268.) In enacting the CPRA, the Legislature, though mindful of the right of privacy, unequivocally declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) Thus, the provisions of the CPRA represent the Legislature's balancing of the narrower privacy interest of individuals with the public's fundamental right to know about the conduct of public business. (See *CBS, Inc.* v. *Block, supra,* 42 Cal.3d at p. 651 [individual privacy a "narrower" but no less important interest than the public's right to access to government files].) The Act

---

[4]Preliminarily, we find City's argument concerning the method to be employed by the trial court in reviewing denial of a requested police report beside the point. Unlike the factual issue presented in *South Coast Newspapers, Inc.* v. *City of Oceanside* (1984) 160 Cal.App.3d 261 [206 Cal.Rptr. 527], here the City seeks to avoid the decision whether to deny disclosure and, instead, to invoke a judicial determination from inception.

provides that: "Public records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as [otherwise] provided" (§ 6253, subd. (a)) and to "receive a copy of any identifiable public record" or a requested "exact copy" unless impracticable (§ 6256).

Specific exemptions from this general requirement of disclosure are listed in section 6254, and include records of complaints to and investigations by local police agencies and records which are exempted by other provisions of law (subds. (f) and (k)). The exemption for police reports contains its own exception which lists matters in police reports which *shall* be disclosed to the public unless disclosure would endanger the safety of an individual or the successful completion of an investigation. Matters to be disclosed include "[t]he full name, current address, and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds." (§ 6254, subd. (f)(1).)

An agency must justify withholding any record by demonstrating either that the requested record "is exempt under express provisions of [the Act]" or that "on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (§ 6255; *CBS, Inc.* v. *Block, supra,* 42 Cal.3d at p. 652, fn. omitted.) The agency is given 10 days to notify a requesting party of its determination whether to comply with the request (§ 6256) subject to a 10-day extension where "unusual circumstances" are shown (§ 6256.1).

The CPRA authorizes "[a]ny person" to bring an action for injunctive or declarative relief to enforce the right to inspect or receive a copy of a public record. (§ 6258.)[5] But there is *no* provision for an action by the government agency or for any action to *prevent* disclosure.[6] (*Los Angeles Police Dept.* v. *Superior Court* (1977) 65 Cal.App.3d 661, 668 [135

[5]It is noteworthy that the definition of "person" under the Act would seem to expressly exclude a governmental agent or employee acting within the scope of employment. (See § 6252, subds. (c) and (f).)

[6]The Information Practices Act of 1977 (Civ. Code, § 1798 et seq.), which provides civil remedies for agency disclosure of confidential information, contains an exception for disclosures made pursuant to CPRA requests. (Civ. Code, §§ 1798.45, 1798.24, subd. (g).)

Cal.Rptr. 575]; but see *Uribe* v. *Howie* (1971) 19 Cal.App.3d 194 [96 Cal.Rptr. 493] [propriety of allowing intervention to prohibit disclosure not raised on appeal by state only].) ■ Nonetheless, despite the clear absence of statutory authority for the instant action, the City urges this court to imply a right to bring an action independent of the provisions of the CPRA based upon the so-called federal "reverse FOIA" actions.

■ The entire legislative history of the CPRA and similar "open government" legislation reflects a paramount concern with implementing the public's right to know about the conduct of public business.[7] As originally enacted in 1968, the provision regarding police records stated only that such records were exempt from mandatory disclosure. (Stats. 1968, ch. 1473, p. 2947; Schaffer et al., *A Look at the California Records Act and Its Exemptions* (1974) 4 Golden Gate L.Rev. 203, 223-225.) ■ The purpose of this exemption was to allow the law enforcement agency to develop a discretionary policy for disclosure of such records. (Statewide Information Policy Com., Final Rep., 1 Appen. to Assem. J. (1970 Reg. Sess.) p. 10.) In actual practice, it may have resulted in policies of nondisclosure contrary to the purpose of the CPRA. (See, e.g., cases discussed in 4 Golden Gate L.Rev., *supra,* at pp. 223-225.)

In 1982, the provision was amended to add subdivisions (f)(1) and (2) specifying information contained within such reports that must be disclosed. The Legislature underscored the overriding emphasis on disclosure, stating: "The absence of clear legislative guidance has resulted in confusion concerning the access of the public and other parties to criminal proceedings and the access of the public to nonsensitive law enforcement records. Therefore, in order to clarify the rights of the public and others to know about the workings of our criminal justice system, it is necessary that this act become effective immediately." (1982 Stats., ch. 83, § 1, pp. 242-244, § 6, p. 246.)[8] The effect of the amendments was "simply to extend public access to information contained in agency records . . . themselves exempted from disclosure by section 6254, subdivision (f)." (*South Coast Newspapers, Inc.* v. *City of Oceanside, supra,* 160 Cal.App.3d at p. 269.)

■ Against this legislative background, the City argues that the cases of *Chrysler Corp.* v. *Brown* (1979) 441 U.S. 281 [60 L.Ed.2d 208, 99 S.Ct.

---

[7]For example, the preamble to the Brown Act (Cal. Open Meeting Law, § 54950 et seq.) states, in pertinent part, that "public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly [] [in order that the people] remain [] informed so that they may retain control over the instruments they have created." (§ 54950.)

[8]Even before the 1982 amendments, the Supreme Court recognized qualifications to the exemption similar to those enacted by Congress to qualify the "investigatory records" exemption under the FOIA. (*American Civil Liberties Union Foundation* v. *Deukmejian, supra,* 32 Cal.3d at pp. 447-449.)

1705] and *Westinghouse Elec. Corp.* v. *Schlesinger* (4th Cir. 1976) 542 F.2d 1190, cert. den. *sub nom., Brown* v. *Westinghouse Electric Corp.* (1977) 431 U.S. 924 [53 L.Ed.2d 239, 97 S.Ct. 2199], afford a legal basis supporting a determination that a city itself may bring an action for the purpose of preventing disclosure. We do not agree.

*Chrysler Corp.* involved the efforts of a government contractor to prevent the public disclosure of affirmative action compliance reports. (*Chrysler Corp.* v. *Brown, supra,* 441 U.S. at pp. 286-287 [60 L.Ed.2d at pp. 215-216].) The court expressly stated that the FOIA is "exclusively a disclosure statute" which "does not afford Chrysler any right to enjoin agency disclosure." (*Id.,* at pp. 292, 294 [60 L.Ed.2d at pp. 219, 220].) Although the court determined that an agency decision to disclose information could be reviewed under the provisions of the Administrative Procedure Act (*id.,* at p. 318 [60 L.Ed.2d at p. 235]), it remanded for consideration of whether the proposed disclosure would violate the Trade Secrets Act (18 U.S.C. § 1905). (*Id.,* at pp. 318-319 [60 L.Ed.2d at p. 235].)

The holding in *Chrysler Corp.* thus casts considerable doubt on the viability of *Westinghouse Elec. Corp.* v. *Schlesinger, supra,* 542 F.2d 1190, upon which the City relies, where the court of appeals concluded that a right to prevent disclosure was implied under the FOIA. (542 F.2d at pp. 1211-1212.) In light of the unequivocal statement in *Chrysler Corp.* that the FOIA affords no "right" to prevent disclosure, the *Westinghouse* holding is seriously undermined, and we decline to follow it.

In any case, the intricate problems of reverse FOIA actions have little relevance to the issue presented by the City. The thrust of the reverse FOIA case, like that of the usual FOIA action, is to obtain judicial review of an agency decision. The parties neither cite nor has our independent search disclosed any case in which a court has agreed to undertake the decision-making function in the first instance.

We recognize the dilemma in which the City finds itself. If it refuses to disclose the information, it faces the possibility of defending an action by The Press Democrat to enforce the CPRA. If it fails to justify the nondisclosure, it will be liable for court costs and attorney fees. (§ 6259, subd. (d).) Moreover, if voluntary disclosure results in an unwarranted invasion of privacy, it becomes exposed to a potential civil suit for damages. (See, e.g., *Perkey* v. *Department of Motor Vehicles* (1986) 42 Cal.3d 185, 203, fn. 7 [228 Cal.Rptr. 169, 721 P.2d 50] (conc. opn. of Bird, C. J.) [unauthorized dissemination of fingerprint records would violate constitutional right of privacy]; and see generally Comment (1976) 11 Harv.Civ.Rights–

Civ.Lib. L.Rev. 596, 627.)[9] But we cannot agree that the solution to such dilemma is to substitute the court as the initial decisionmaking body.[10]

In light of the clear legislative objective to promote disclosure which underlies the CPRA, we find no reason to imply a countervailing intention to subject a requester of information to a potential civil action instituted by the government agency for the purpose of testing the legitimacy of the request. Rather than promoting the goals of open government and full disclosure, such a result would be at war with the very purpose of the CPRA and would effectively discourage requests for disclosure by a member of the public or representative surrogate.

Undaunted, City also cites *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 659 [117 Cal.Rptr. 106], for the related proposition that the trial court's jurisdiction pursuant to Code of Civil Procedure section 1060 may be invoked to determine the controversy between the parties. *Black Panther Party,* however, involved review of an agency determination of nondisclosure, which is expressly authorized under the CPRA. In contrast, the City here claims that it is unable to balance the rights of the various parties and reach a decision whether to disclose. Somewhat inconsistently, it also argues that the verified complaint constitutes its "determination and the reasons" whether to comply as required by section 6256. Yet, nowhere in the complaint or in the briefs do we find any suggestion that The Press Democrat either has sought or intends to bring an action to compel disclosure of the information if its request is denied. The absence of such allegations manifests that no live controversy exists suitable for adjudication under Code of Civil Procedure section 1060. "[W]hen a trial court exercises its discretion in refusing to exercise its power to grant declaratory relief, an appellate court will not set aside such action except in case of a patent abuse of that discretion. [Citation.]" (*Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 665 [118 Cal.Rptr. 100] [court should have

---

[9]The City argues that our recent decision in *Cutter* v. *Brownbridge* (1986) 183 Cal.App.3d 836 [228 Cal.Rptr. 545], precludes the City from "voluntarily" publishing private information. We are mindful that *Cutter* involved the applicability of the Civil Code section 47, subdivision 2 immunity from suit to an uncompelled disclosure by a therapist of information subject to the statutory psychotherapist-patient privilege. In contrast, the City's case arises under a complex statutory scheme designed to encourage disclosure of public documents. We conclude that *Cutter* is inapposite.

Moreover, the recent decision of our Supreme Court in *CBS, Inc.* v. *Block, supra,* 42 Cal.3d 646, states that intimate information contained in public records regarding medical or psychological histories may be deleted from public records. (*Id.,* at p. 655.) However, the presence of such information would not justify a blanket refusal to disclose the entire record. (*Id.,* at p. 653.)

[10]We do not address the issue of whether and to what extent a disclosure under the CPRA might violate the constitutional privacy rights of a submitter of information since that issue is not presented in this action.

dismissed taxpayer's suit for interpretation of Mulford-Carrell Act and related duty of Department of Health].) ■■ The court stated, as here relevant: "It is the prerogative of the Legislature to prescribe the powers and authority of an executive agency created to deal with a specific public problem such as public health. The manner in which this authority is exercised is a matter of administrative discretion. The wisdom or effectiveness of the exercise of either legislative or administrative discretion is judged essentially by the political process. [¶] In short, the judicial branch of government is not the overseer of the other two." (*Id.*, at p. 662.) In recognizing that section 1060 does not confer authority to control administrative discretion, the opinion concluded that: "'[T]he courts cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards.' (*Harman* v. *City and County of San Francisco,* 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248].)" (*Id.*, at p. 664.)

Nor does the fact that it is the agency itself that asks the court to preview its exercise of discretion require a different conclusion. ■■ "It would violate the doctrine of separation of powers if the courts in such a situation, under the guise of declaratory relief, made pronouncements in a field reserved to legislative or executive discretion. [¶] A difference of opinion as to the interpretation of a statute as between a citizen and a governmental agency does not give rise to a justiciable controversy [citations] and provides no compelling reason for a court to attempt to direct the manner by which the agency shall administer the law. [Citations.]" (*Zetterberg* v. *State Dept. of Public Health, supra,* 43 Cal.App.3d at pp. 663-664.)

■■ ■■ We conclude that neither the provisions of the CPRA nor the Declaratory Relief Act provide for the maintenance of an action by a city or other governmental entity to decide questions of disclosure under the CPRA in the first instance.

The order and judgment of dismissal are affirmed.

Newsom, J., and Holmdahl, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 1987.