Filed 2/5/15  P. v. Graves-Butler CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DARNELL GRAVES-BUTLER,<br><br>    Defendant and Appellant. | D066219<br><br><br>(Super. Ct. No. SCD250478) |


APPEAL from a judgment of the Superior Court of San Diego County, Laura Parsky, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

Darnell Graves-Butler appeals from a judgment convicting him of selling cocaine. He argues the trial court erred in admitting evidence showing that on two prior occasions

he was involved in cocaine sales transactions. We conclude the court did not abuse its discretion in admitting the evidence to prove defendant's intent during the current charged offense.

FACTUAL AND PROCEDURAL BACKGROUND

Around 4:30 p.m. on August 28, 2013, Officer Marlo Woods was working as an undercover officer on 15th Street in downtown San Diego in an area known for high narcotics activity. While walking on the street, Officer Woods asked Larry Allen if he knew where Woods could "get a dub," meaning $20 worth of drugs. Allen responded that " 'Yeah, I got it,' " and pulled a small package of rock cocaine from his mouth. Officer Woods was holding $50 in prerecorded bills. Noticing Officer Woods's money, Allen asked him if he wanted "40." Officer Woods responded that he would "take 40 if he had 40" and gave Allen two $20 bills.

Allen had only $20 worth of cocaine, and he told Officer Woods that he would get the rest of the drugs. Officer Woods told Allen to just give him $20 back if he did not have more drugs, but Allen told Woods to stay there and he started walking away. As he was walking, Allen pointed at a vehicle that was stopped across the street and said to Woods " 'He got it,' " apparently referring to someone in the vehicle.

After he saw Allen get into the vehicle, Officer Woods walked away and transmitted a description of Allen and the vehicle to other members of the undercover operation. When uniformed officers contacted the vehicle, defendant was in the driver's seat; another male was in the front passenger seat; and Allen was in the back seat. When searching defendant, the police found in his pocket the prerecorded bills that Officer

2

Woods gave to Allen. In his wallet, defendant had about $1,039 cash, including forty-four $20 bills, a denomination commonly used for rock cocaine purchases. The police found several cell phones in the car, including one that contained a "selfie" picture of defendant and a series of text messages reflecting drug sale transactions (for example, " 'I'm on H Street in National City. Will throw you 20 if you can deliver' "). Although no drugs were found during a search of the car and its occupants, a police narcotics-sniffing dog reacted in a manner that suggested narcotics may have recently been present in the driver's seat area of the car.

*Prior Uncharged Offense Evidence*

To support its theory that defendant had the intent to sell cocaine at the time of the charged incident, the prosecution introduced evidence of two incidents in 2008 when defendant was arrested for selling cocaine during undercover operations in the downtown San Diego area.

The first incident occurred at about 8:00 p.m. on February 13, 2008, on 14th Street, and the second incident occurred at about 7:00 p.m. on March 6, 2008, on 7th Avenue. During the first incident, defendant approached the undercover officer and asked for his money. Realizing defendant was offering to sell him drugs, the officer handed defendant $40 in prerecorded bills in exchange for two pieces of rock cocaine. The officer gave the "bust signal" to the marked patrol units, and defendant was arrested and found in possession of the prerecorded bills.

During the second incident, the undercover officer made eye contact with defendant and used a hand gesture to indicate he wanted a "$20 rock." Defendant and the

3

officer approached each other; the officer told defendant he needed "twenty"; and defendant indicated he had it.  Defendant handed the officer a piece of rock cocaine in exchange for a prerecorded $20 bill; the officer gave the "bust signal"; and defendant was arrested and found in possession of the prerecorded bill.

*Defense*

Testifying on behalf of the defense, Allen claimed defendant did not provide him the cocaine that he sold to Officer Woods, and he gave defendant the prerecorded $40 bills because he owed defendant money.

*Jury Verdict and Sentence*

Defendant was charged with selling cocaine base.  (Health & Saf. Code, § 11352, subd. (a).)  The prosecutor argued to the jury that it could find defendant guilty of the charged offense on several theories.  That is, the jury could find that Allen was acting as defendant's "facilitator" or middleman in a drug sales operation and defendant provided Allen the drugs that were sold to Officer Woods.  Also, the jury could find defendant accepted the prerecorded money with the intent to sell cocaine to Allen, and the cocaine was swallowed, discarded, or hidden in a manner that prevented its discovery upon the arrival of the police.

The jury convicted defendant as charged.  The trial court sentenced him to seven years in prison, consisting of five years for the cocaine sale offense, plus two years for two prior prison term enhancements.

4

DISCUSSION

Prior to trial, defense counsel moved to exclude the evidence concerning defendant's 2008 cocaine sale offenses, arguing the evidence was irrelevant apart from criminal propensity, and it was unduly prejudicial, time consuming, and remote. The prosecutor asserted the evidence was relevant to show defendant's intent to sell narcotics and to refute the defense claim that Allen gave defendant the prerecorded money because he owed him money. After hearing counsel's arguments, the trial court ruled the prosecution could present the evidence for the limited purpose of determining defendant's intent.[1]

Based on the court's ruling, the jury was instructed that if it found by a preponderance of the evidence that defendant committed the uncharged offenses in February and March 2008, it could consider the evidence for the limited purpose of determining defendant's intent.[2]

*Law*

Evidence of the defendant's misconduct that is not charged in the current case is generally inadmissible for purposes of showing the defendant's bad character or propensity to commit crimes. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18

---

[1] The prosecutor also contended the evidence was admissible to show common plan, but the trial court rejected this claim.

[2] The instruction stated the jury could consider the evidence to decide whether defendant acted with the intent: (1) to aid and abet the perpetrator in committing the crime in the current case; (2) to agree with Allen to sell or furnish a controlled substance; (3) that one or more alleged members of the conspiracy would sell or furnish a controlled substance; and (4) to sell or furnish a controlled substance.

Cal.4th 349, 369.) The rationale for excluding uncharged misconduct evidence is that the jury might convict merely because of the defendant's criminal propensity or bad character regardless whether guilt is proven beyond a reasonable doubt. (See *People v. Alcala* (1984) 36 Cal.3d 604, 631.) However, uncharged offense evidence may be admitted for the limited purpose of proving material facts apart from criminal disposition, including to prove intent. (Evid. Code, § 1101, subd. (b); *Kipp, supra*, at p. 369.) To be relevant to show intent, the conduct during the uncharged and charged acts must be sufficiently similar to support a rational inference that the defendant probably harbored the same intent in each instance. (*Kipp, supra*, p. 371.) The recurrence of a similar result tends increasingly with each instance to negate accident, good faith, or other innocent mental state. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1096.)

Because of the prejudice inherent in uncharged offense evidence, the evidence must have substantial probative value, and the trial court must evaluate under Evidence Code section 352 whether the probative value is outweighed by the probability of undue prejudice, confusing the issues, or misleading the jury. (*People v. Kipp, supra*, 18 Cal.4th at p. 371; *People v. McCurdy, supra*, 59 Cal.4th at p. 1098.) When deciding whether to admit the uncharged offense evidence, the trial court may consider such factors as its nature, relevance, and possible remoteness; the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry; its similarity to the charged offense; its likely prejudicial impact on the jurors; the burden on the defendant in defending against the uncharged offense; and the availability of less prejudicial alternatives to its outright admission. (See *People v.*

6

*McCurdy, supra*, at pp. 1098-1099.) Undue prejudice does not exist merely because highly probative evidence is damaging to the defense case, but rather arises from evidence that uniquely tends to evoke an emotional bias against the defendant or cause prejudgment of the issues based on extraneous factors. (*People v. Doolin* (2009) 45 Cal.4th 390, 438-439.) On appeal, we review the trial court's rulings for abuse of discretion. (*People v. Kipp, supra*, 18 Cal.4th at pp. 369, 371.)

*Analysis*

Defendant argues the court erred in admitting the uncharged crimes evidence because it had little or no probative value and it prejudicially portrayed him as a "serial drug dealer." Also, he asserts the evidence consumed an undue amount of time, and the prior offenses were unduly remote because they occurred five years before the current charged offense.

Regarding admission of the evidence on the issue of intent, defendant contends the only issue at trial was whether he in fact provided Allen with the drugs sold to Officer Woods. He posits the issue was whether he acted at all, not whether he had a particular intent in doing so. The contention is unavailing.

The evidence showed that Officer Woods gave Allen prerecorded money to get more drugs, and Allen then made contact with defendant. Shortly thereafter, the police found defendant in possession of the prerecorded money. The defense presented evidence to support that Allen gave defendant the prerecorded money to repay a loan, whereas the prosecution claimed Allen gave defendant the money because he was defendant's middleman in a drug sales operation or he was purchasing drugs for himself.

7

Thus, defendant's state of mind at the time he accepted the money from Allen was a highly disputed issue; i.e., the jury had to decide whether he took the money for an innocent purpose as claimed by the defense, or whether he took the money with the intent to sell drugs.

Thus, the trial court could reasonably conclude that defendant's prior conduct of selling drugs had significant relevance to support his intent to sell drugs when he accepted the money from Allen. Further, the trial court could reasonably conclude the high probative value was not outweighed by the potential for prejudice because the prior and current offenses involved similar undercover purchase transactions; the question of defendant's intent during his contact with Allen was a primary disputed issue; and there was nothing unduly inflammatory about his prior drug sales conduct.

To support his claim of error, defendant argues the uncharged offense evidence consumed "an inordinate amount of time and witnesses" which enabled the prosecution to "portray [him] as a drug dealer, without regard to the facts of the present case." (Underscoring omitted.) We are satisfied that this did not occur. Four witnesses testified about the prior incidents (i.e., the undercover officer and the arresting officer for each incident). The incidents were straightforward undercover purchase transactions and the testimony was not unduly lengthy. The trial court instructed the jurors that the prosecution had to prove that defendant committed the uncharged offenses by a preponderance of the evidence, and if the prosecution did not meet this burden the jurors should "disregard this evidence entirely." Further, the jurors were told that if they decided defendant committed the uncharged offenses, they could consider the uncharged

8

offense evidence on the issue of intent only; they should not consider the evidence for any other purpose or use it to conclude defendant had a bad character or was disposed to commit a crime; the evidence was only one factor to consider along with all the other evidence; and the prosecution "must still prove the charge beyond a reasonable doubt." (See CALCRIM NO. 375.)

From these instructions the jury would have understood that the evidence concerning the prior incidents was entirely distinct from the evidence of the current charged offense. The jurors were told they should not even consider the uncharged offense evidence if they did not first find defendant committed the offenses by a preponderance of the evidence; they could consider the evidence only on the issue of intent; and the current offenses still had to be proven beyond a reasonable doubt. We presume the jurors understood and followed the court's instructions. (*People v. McCurdy, supra*, 59 Cal.4th at p. 1096.) Under these instructions, reasonable jurors would not have thought they could rely on the prior uncharged offense evidence to find guilt based on defendant being a drug dealer without determining whether the facts of the current incident showed he participated in the charged drug sale incident.

Defendant also asserts that, according to the prosecutor, the February 13, 2008 incident did not result in a conviction, and this was a factor supporting exclusion of the evidence. To the contrary, although during pretrial motions the prosecutor told the court that she had not yet confirmed that the February incident resulted in a conviction, the record shows defendant did incur a conviction for this charge.

Finally, the trial court was not required to exclude the uncharged offense evidence on remoteness grounds.  The record shows that defendant received two-year concurrent prison terms for his 2008 convictions, and although he was scheduled to be released on parole in 2009, he was ultimately retained in custody until 2012 due to additional charges brought against him for other offenses that predated the 2008 offenses.  Thus, during the five years between the 2008 offenses and the current 2013 offense, defendant was incarcerated for the majority of the time.  Because he was not free in the community for most of the five-year period, the trial court was not required to find his prior drug sale offenses had diminished relevancy due to remoteness.

## DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


McDONALD, J.

10