Filed 1/23/25  P. v. Anderson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082956 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD263909) |
| ANGELA ELAINE ANDERSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Assistant Attorney General, Charles C. Ragland, Kathryn Kirschbaum and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Angela Elaine Anderson pleaded guilty to voluntary manslaughter as a lesser included offense of first degree murder. She filed a petition for resentencing under Penal Code section 1172.6.[1] The court concluded after the evidentiary hearing that the specific factual basis for Anderson's manslaughter plea, the truth of which she adopted at her plea hearing, established her culpability for second degree murder as an aider and abettor. Accordingly, her petition was denied.

Anderson challenges the trial court's admission of the statements from the factual basis for her plea. But having failed to object when the People offered those statements into evidence, she has forfeited this issue on appeal. We affirm the court's order on that basis.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Anderson's 2016 Guilty Plea to the Manslaughter of Kirk Sampson*

In September 2015, Anderson and Frederick Weekly were charged with the murder of Kirk Sampson. (§ 187, subd. (a).) Sampson was killed because of a dispute with Anderson over a sport-utility vehicle.[2] Anderson contributed to the purchase of the SUV, but it was registered in Sampson's

---

[1] Undesignated statutory references are to the Penal Code. Legislation in 2022 renumbered section 1170.95 to section 1172.6 without substantive changes. (Stats. 2022, ch. 58, § 10.) For clarity, we will use the current number throughout this opinion.

[2] Because Anderson pleaded guilty, we take these facts from the transcript of the preliminary hearing, the written change of plea form, the transcript of her change of plea hearing during which she stated under oath that the factual basis in her plea agreement was true and that she was stipulating to the facts elicited during the preliminary hearing, and the transcript of the evidentiary hearing on her petition for resentencing.

name and kept at his house.  Believing the SUV was hers, Anderson enlisted Weekly to take it from Sampson.

Early in the morning of September 3, 2015, Weekly delivered the SUV to Anderson.  He assured her that Sampson had not reported it stolen.  Anderson, Weekly, and a third person dumped the SUV somewhere else that morning because Anderson did not want to attract attention to herself.  Meanwhile, Sampson's body was found on the side of the road after he had been fatally shot in the chest.  When the SUV was recovered a few days later, Sampson's blood was found inside.

In 2016, Anderson pleaded guilty to voluntary manslaughter (§ 192, subd. (a)) as a lesser included offense of first degree murder and was sentenced to the upper prison term of 11 years.  All other counts against her were dismissed.  Judgment was affirmed by this court in 2017.  (*People v. Anderson* (Sept. 21, 2017, D071238) [nonpub. opn.].)  For his part, Weekly was convicted of first degree murder and sentenced to 25 years to life plus a consecutive term of 25 years to life for a firearm allegation.  (*People v. Weekly* (Mar. 20, 2019, D074806) [nonpub. opn.].)

B.    *Statutory Amendments in 2019*

In California prior to 2019, a person who committed a homicide during the perpetration of certain enumerated inherently dangerous felonies was guilty of first degree murder, also referred to as "felony murder," even if the killing was unintentional or accidental.  (*People v. Cavitt* (2004) 33 Cal.4th 187, 197; *People v. Ervin* (2021) 72 Cal.App.5th 90, 94.)  Additionally, a person who knowingly aided and abetted a nonhomicide crime was guilty of any murder that was the "natural and probable consequence" of the intended crime, irrespective of the aider and abettor's mens rea.  (*People v. Gentile*

3

(2020) 10 Cal.5th 830, 845; *People v. Chiu* (2014) 59 Cal.4th 155, 164–167; *People v. Medina* (2009) 46 Cal.4th 913, 920.)

This all changed when Senate Bill No. 1437 (Senate Bill 1437) became effective on January 1, 2019. The Legislature enacted Senate Bill 1437 "to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) To this end, the bill amended section 189 to limit the felony murder doctrine to those who were the actual killer, intended to kill, or were a major participant in the underlying felony and acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3; see § 189, subd. (e).) It also revised section 188 to state that a person must act with malice to be guilty of murder and that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; see § 188, subd. (a)(3).) This change eliminated the natural and probable consequences doctrine of aiding and abetting liability for second degree murder. (*People v. Reyes* (2023) 14 Cal.5th 981, 990.) The bill did not, however, eliminate accomplice liability for murder under direct aiding and abetting principles. (*Ibid.*)

Senate Bill 1437 also created a process that persons convicted of felony murder or murder under the natural and probable consequences doctrine could use to petition for resentencing. (Stats. 2018, ch. 1015, § 4.) Senate Bill No. 775 (Senate Bill 775), which became effective January 1, 2022, expanded the eligibility for the petition process to include, as relevant here, persons convicted of manslaughter if they were charged with and could have been convicted of murder on a now-invalid theory. (Stats. 2021, ch. 551, § 2.)

4

To be eligible for resentencing under section 1172.6, the petitioner must make a prima facie showing that she could not presently be convicted of murder as a result of the amendments to sections 188 and 189. (§ 1172.6, subd. (a)(3).) If a prima facie case is made, the court must conduct an evidentiary hearing during which "[t]he admission of evidence is governed by the Evidence Code" (*id.*, subds. (c), (d)(1), (d)(3)), a requirement added by Senate Bill 775 (Stats. 2021, ch. 551, § 2).[3] The "burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under current law. (§ 1172.6, subd. (d)(3).) If the prosecution proves its case, the petitioner is not resentenced; however, if the burden of proof is not met, the conviction being challenged is vacated, and petitioner will be resentenced on any remaining counts. (*Id.*, subds. (a), (d)(3).)

## C.     *Anderson's Petition for Resentencing*

After Senate Bill 775 became effective, Anderson filed a petition for resentencing under section 1172.6. She was able to establish a prima facie case that she could not presently be convicted of murder. During the evidentiary hearing, the People offered witness testimony, the transcript of the preliminary hearing, Anderson's plea agreement, and the transcript of her change of plea hearing. Anderson did not present any evidence to support her petition.

---

[3]     In relevant part, subdivision (d)(3) of section 1172.6 provides, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

5

The prosecution opposed Anderson's petition on the theories that she was guilty of murder both as a direct aider and abettor and she was a major participant in a felony murder who acted with reckless indifference to human life. It relied heavily on the extensive factual basis for Anderson's plea agreement, which was included in the change of plea form and discussed orally with her before the plea was accepted.[4] While under oath during her change of plea hearing, Anderson confirmed that these statements were true after the judge read them to her.

Before the evidentiary hearing, Anderson asserted in her papers that the People's reliance on the factual basis for her plea agreement "falls far short of proving her guilt beyond a reasonable doubt." She contended that her plea "must be considered with skepticism[ ]" because she accepted it "to avoid further liability for a murder prosecution based on now-invalidated theories of liability. Her plea thus represents not a genuine admission of guilt, but an admission required by the prosecutor under threat of murder prosecution." She also suggested that some of the allegations in the factual basis were not true. Anderson urged the court to treat her factual basis "as a legal fiction rather than accepted as fact." But she did not object when the People offered the certified transcript of her change of plea hearing.

The court denied Anderson's petition, concluding the evidence established beyond a reasonable doubt that she would be guilty of second

---

4    The factual basis for Anderson's plea stated in relevant part: "I intentionally instructed Frederick Weekly to take Kirk Sampson's car knowing Mr. Weekly was violent and dangerous. When I instructed Mr. Weekly to take Mr. Sampson's car I knew that sending Mr. Weekly to take Mr. Sampson's car was dangerous to human life, but nonetheless, I instructed Mr. Weekly to do it anyway. By sending Mr. Weekly to take Mr. Sampson's car, Mr. Sampson was killed. At the preliminary hearing, it was established that Mr. Weekly killed Mr. Sampson with a firearm . . . ."

degree murder as an aider and abettor.  The court rejected Anderson's argument that the factual basis of her plea should not be given significant weight, finding that it contained "a true statement of what [Anderson] knew and did."  In reaching  its decision to deny Anderson's petition, the court stated that "absent the statement Anderson made to establish a factual basis for her guilty plea, the other evidence alone does not establish all of the elements for implied malice murder."

## DISCUSSION

The admission of evidence during the hearing on a resentencing petition under section 1172.6 is "governed by the Evidence Code."  This appeal attempts to raise as an issue of first impression whether this rule allows for the admission of the factual basis of a manslaughter plea. Anderson argues that it would be "absurd" to think that the Legislature would intend for a court to be able to consider the factual basis for a manslaughter plea that was negotiated to *avoid* a murder prosecution during the hearing on a section 1172.6 petition in which the inquiry is whether the petitioner would be guilty of murder.  Accordingly, she asks us to read into the statute a "bar [to] the admission of a defendant's manslaughter plea against her at the evidentiary hearing."  The People counter that Anderson forfeited this argument because she did not object when the statements in the factual basis of her plea agreement were offered into evidence and that, in any case, they were properly admitted.

A claim that evidence was erroneously admitted during a proceeding in which the Evidence Code applies is forfeited absent an objection when the evidence was offered.  (Evid. Code, § 353, subd. (a).)  Anderson asserts that her claim was not forfeited because she "argued below exactly what she

7

argues here—that it is contrary to section 1172.6 for appellant's manslaughter plea to be used against her at the evidentiary hearing."

We question her characterization. In the trial court she claimed that her statements regarding the factual basis for her plea should not be given any significant weight. On appeal she contends they were inadmissible. Those are two different arguments. In any event, the dispositive fact as to forfeiture is that she did not object when the People moved the statements of the factual basis of her plea agreement into evidence. Therefore, her claim is forfeited, and we are "barred" from exercising our discretion to consider its merits. (*People v. Williams* (1998) 17 Cal.4th 148, 161 fn. 6.)

We would affirm the court's order even if the issue had been preserved. When statutory language is unambiguous, as is the case here, we ordinarily follow its plain meaning.[5] (*In re D.B.* (2014) 58 Cal.4th 941, 948.) An exception to this rule exists when following the literal meaning of statutory text would lead to " 'absurd results,' " i.e., results "so unreasonable [that] the Legislature could not have intended them." (*Id.* at pp. 947–948.) "But we employ [the exception] 'sparingly and only in extreme cases.' " (*People v. M.H.* (2022) 81 Cal.App.5th 299, 304.)

" 'The statutory language . . . is the best indicator of legislative intent' " (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 350), so we would start there. Senate Bill 775 authorized courts to consider a broad spectrum of evidence during the evidentiary hearing, including "evidence previously admitted at [a] prior hearing or trial that is admissible under current law." (§ 1172.6, subd. (d)(3).) Anderson's under-oath affirmation of the truth of the factual basis of her plea—an adoptive admission under Evidence Code section

---

5    Anderson appears to concede that the language concerning the applicability of the Evidence Code is not ambiguous.

1221—plainly falls into this category, a result that the Legislature appears to have intended. (See Assem. Com. on Pub. Safety, Analysis of Sen. Bill 775 (2021–2022 Reg. Session) as amended July 6, 2021, p. 10 [noting that plea hearing transcripts were being used during evidentiary hearings on § 1172.6 petitions].)

Anderson bases her absurdity argument on the statement from Senate Bill 775's legislative history recognizing that "neither felony murder nor the natural and probable consequences doctrines are theories on which one can commit voluntary manslaughter [citation], . . . [but] a petitioner may have pled guilty or no contest to voluntary manslaughter in order to forego the risk of being convicted of murder or attempted murder under one of these subsequently abrogated theories of liability." (Assem. Com. on Pub. Safety, Analysis of Sen. Bill 775, *supra,* as amended July 6, 2021, p. 7.) This statement, however, would not help her cause because it was made in context of discussing *People v. Turner* (2020) 45 Cal.App.5th 428, 439–440, where this court observed that Turner may not have committed the manslaughter offense to which he pleaded guilty to avoid a murder prosecution. The absence from subdivision (d)(3) of section 1172.6 of an exclusion for manslaughter pleas despite this acknowledgement of this possibility, tells us that the Legislature intended specific affirmations of a factual basis to be admissible and considered alongside all other admissible evidence. Thus, we would have no reason to depart from the plain statutory language the

9

Legislature chose concerning the admissibility of evidence during the hearing stage of a section 1172.6 petition.[6]

**DISPOSITION**

The order is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

CASTILLO, J.

---

[6] Because we would reach this conclusion, we do not discuss Anderson's arguments that the factual basis of a plea agreement should be considered only at the prima facie stage of the process or that the perceived error prejudiced her.