Filed 7/18/25  Anderson v. City of Pasadena CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KEITH ANDERSON et al., | B333331 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV28881) |
| v. | |
| CITY OF PASADENA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

Conlogue Law, Kevin S. Conlogue, and Ashley M. Conlogue for Plaintiffs and Appellants.

McCune & Harber and Dominic A. Quiller; Office of the City Attorney-Civil Division and Danielle St. Clair for Defendants and Respondents.

In response to what was later determined to be a hoax suicide call, officers from the Pasadena Police Department (the Department), without a warrant, made forced entry into the home of Keith Anderson (Anderson) and Lorena McCaigue (McCaigue) (collectively, Plaintiffs).  The officers searched for a suicide victim and, after finding none, information identifying who owned the home.  Subsequent to learning of the search of their home, Plaintiffs sued the City of Pasadena (the City), the four officers who entered the home, and a police administrator (collectively, Defendants) who denied their requests for any audio recordings or body camera video of the entry and search.  The trial court granted Defendants' motion for summary judgment, finding some claims were time-barred and those that were not still failed as a matter of law because the officers did not violate Plaintiffs' constitutional rights and the requested audio/visual materials were protected from disclosure as investigatory materials.  We consider whether the trial court's ruling was correct.

## I.  BACKGROUND

### A.    *The Incident and Plaintiffs' Lawsuit*

On the afternoon of July 22, 2019, at approximately 3:45 p.m., the Department received a call from an individual stating he was going to commit suicide by hanging himself with a rope; the man gave Plaintiffs' home as his address.  The call lasted approximately 21 minutes.

At approximately 4:13 p.m., Officer Alex Torres arrived at Plaintiffs' residence.  It is Unit number 2 in a two-story townhouse located in a condominium complex.  Officer Torres knocked, identified himself as a police officer, knocked again, and

then kicked open the front door.  He did not see anyone in the residence after gaining entry.  Shortly after Officer Torres entered the residence, he was joined by Officers John Cybulski and Brian Petrella, and they joined in searching the first and second floor of the premises for a suicide victim but did not find one.

At approximately 4:14 p.m., the three officers convened on the first floor of the residence where Officer Torres suggested one of them check to see if there was a garage associated with the unit and Officer Cybulski then exited the residence.  A minute later, at approximately 4:15 p.m., Officer Torres suggested Officer Petrella look for "paperwork" to see if the home was in fact the caller's residence.  Sporadically over the course of the next few minutes, Officers Torres and Petrella looked at or in a closet, four desk drawers, and various items on a kitchen countertop (a medicine bottle and some mail).  Around the same time, Officer Petrella joined Officer Cybulski in the condominium complex's underground garage (with individual garages protected by closed garage doors) and learned from a complex resident that there were two people living in Unit 2, a man and a woman. Officer Cybulski thought he might have heard a rustling sound from one of the garages, but he did not know if it was the garage assigned to Unit 2.  Around the same time, Sergeant Ara Bzdigian arrived at Unit 2 and Officer Torres advised that "nobody's here" and that he could not find any paperwork with a last name.

According to testimony and body camera footage that would be later produced in connection with Plaintiffs' civil suit, the officers then spent some time looking (not continuously) at items (including displayed greeting cards and paperwork on a kitchen

3

counter) that might reveal whether the name given by the purportedly suicidal caller was the owner or occupant of the residence. Eventually, one of the officers found a dog license renewal document with McCaigue's name and Officer Petrella called police dispatch and asked them to run her name. After the dispatch operator identified McCaigue's employer, Officer Torres called the employer and provided his phone number so that McCaigue could call him, which she did. The officers also made contact with property management personnel to ensure Unit 2 could be repaired or otherwise secured before they left the scene. The officers were in (or had access to) Plaintiffs' residence for a total of approximately 17 minutes, but the time they spent looking for information identifying the occupants or owners of Unit 2 was a markedly smaller fraction of that period.

In preparing his post-incident police report, Officer Torres listened to the recording of the call made to the Department's dispatch center. The caller, who said he had been scammed out of $26,000 and wanted to hang himself, spoke in a "monotone voice and did not appear to be in any type of mental distress." In the background, Officer Torres heard multiple voices, which led him to believe the call was being made from a call center. Based on what he heard on the recording, Officer Torres formed the opinion the call was a hoax.

In the months following the incident, Anderson repeatedly requested the City provide him with copies of video from the officers' body-worn cameras. In each instance, the City explained the videos could not be released because there was an open investigation into the incident. Later, through their attorney, Plaintiffs requested the City provide various documents and items related to the search of their home, including audio

4

recordings and body camera footage. The City produced a redacted incident report, but it declined to produce the requested audio and video recordings and accompanying logs because such records were exempt from disclosure as part of an investigatory file. The person principally responsible for responding to Plaintiffs' requests for information was defendant Alicia Patterson (Patterson), a Police Administrator with the City.

On June 15, 2020, almost a year after the warrantless search of their home, Plaintiffs submitted claims to the City seeking $10,000,000 in damages. Attached to their claims were copies of still photographs from their home surveillance camera and a copy of Officer Torres's post-incident crime report.[1]

In a letter and accompanying proof of service dated July 28, 2020, (the envelope was postmarked July 30, 2020), the City advised Plaintiffs their claims were untimely and their only recourse was to apply "without delay" to the City for relief pursuant to Government Code section 911.4. Neither Plaintiff sought leave to present a late claim.

Instead, Plaintiffs sued Defendants on July 31, 2020. Their complaint alleged a mix of common law and statutory causes of action: violation of the Bane Act (Civ. Code, § 52.1),[2]

---

[1] The possible crime identified in Officer Torres's after-action account was "making a false police report" (Pen Code, § 148.3, subd. (a)).

[2] The Bane Act makes it unlawful for any person to interfere or attempt to interfere, by threat, intimidation, or coercion, with the exercise or enjoyment of California constitutional or statutory rights and permits an injured party to bring a civil action for damages or injunctive relief. (Civ. Code, § 52.1, subds. (a)-(b);

trespass, invasion of privacy, negligence, a 42 U.S.C. § 1983 (section 1983) claim for unlawful entry and search, a *Monell v. Dep't of Soc. Servs.* (1978) 436 U.S. 658 claim, and a claim for an asserted violation of California's Public Records Act (CPRA) (former Gov. Code, § 6250, et seq.[3]).

Defendants answered the complaint by generally denying its allegations and asserting various affirmative defenses, including laches, exigent circumstances, and qualified immunity.

###### B. *Defendants' Motion for Summary Judgment*

In June 2022, Defendants moved for summary judgment or, in the alternative, summary adjudication. Defendants argued Plaintiffs' Bane Act and common law tort causes of action were barred because Plaintiffs did not submit an administrative claim to the City within six months of the search of their residence. With respect to the section 1983 cause of action, Defendants maintained the officers' entry into Plaintiffs' home and the resulting search was excused by the exigent circumstances exception to the warrant requirement and they were therefore

---

*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 881-883.)

[3] Effective January 1, 2023, the Legislature renumbered and reorganized the CPRA. (Assembly Bill No. 473 (2021-2022 Reg. Sess.).) The amendments were "entirely nonsubstantive in effect." (Gov. Code, § 7920.100.) Because all the briefing in the trial court took place before the renumbering and reorganization went into effect, the parties have continued to use the CPRA's prior numbering in their briefing on appeal. To avoid any confusion, we will do the same.

entitled to qualified immunity. Defendants argued the City was entitled to judgment as a matter of law on the *Monell* claim because there was no violation of Plaintiffs' constitutional rights for largely the same reasons. Defendants contended further that Plaintiffs were not entitled under the CPRA to the requested recordings and logs because those materials were part of an ongoing investigation regarding the incident.

Plaintiffs' opposition to the summary judgment motion contested each of the points argued by Defendants. They contended the City failed to give them timely notice of the untimeliness of their claims, which rendered their Bane Act and common law tort claims viable. They argued disputed issues of fact prevented judgment as a matter of law on their federal civil rights claims because, in their view, any purported exigency ended after the officers' initial two-three minute search of the premises revealed there was no one living or dead inside their home. With respect to the CPRA claim, Plaintiffs did not dispute there was an open investigation into the incident or that the requested audio and video materials were part of investigatory files; instead, they maintained the denial of their CPRA requests was improper because the City knew on the day of the incident that the call was a hoax and, as a result, there was no need for an investigation.[4]

---

[4] Concurrent with their opposition, Plaintiffs submitted evidentiary objections to certain statements of undisputed material fact proffered by Defendants on the principal grounds that the statements were irrelevant or constituted legal conclusions. The record does not reveal what ruling, if any, the trial court made on the objections, so we proceed on the

7

In reply, Defendants argued the City's rejection of Plaintiffs' government tort claims as untimely was itself timely, whether measured from the date of the letter or the date stamp on the letter's envelope. Defendants also maintained, as they had in their moving papers, that they were entitled to judgment as a matter of law on the civil rights claims because the officers who searched Plaintiffs' home did so as a result of exigent circumstances.

The trial court granted Defendants' motion for summary judgment. The court ruled the City and the officers were entitled to judgment as a matter of law on the Bane Act and common law tort causes of action because Plaintiffs did not timely submit an administrative claim to the City. On the unlawful search and unlawful practices causes of action, the court found the four officers were legally justified in entering Plaintiffs' home without a warrant and did not exceed the scope of the search permitted under such circumstances—which entitled them to qualified immunity. Finally, the court found the City and Patterson were legally justified in withholding the requested records under the CPRA's exemption for investigative materials.

## II. DISCUSSION

The trial court's summary judgment ruling is correct. The undisputed facts establish Plaintiffs did not timely submit a tort claim for damages to the City, which is a prerequisite for bringing their Bane Act and common law tort causes of action. The four officers were entitled to judgment as a matter of law on

---

understanding they were overruled. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

the section 1983 unlawful entry and search cause of action because the undisputed facts establish they did not violate Plaintiffs' Fourth Amendment rights; based on the information known to the officers at the time (i.e., a potential suicide victim at Plaintiffs' address), the officers acted in an objectively reasonable manner in entering Plaintiffs' home without a warrant and conducting a limited search both spatially and temporally—first, for a suicide victim (in Unit 2 and the property's underground garage), and then for information identifying the residence's owners and occupants. For substantially the same reason, the City was entitled to judgment as a matter of law on Plaintiffs' *Monell* cause of action, which authorizes civil liability when a locality maintains a policy or practice that violates or is indifferent to constitutional rights. Finally, the City and Patterson were entitled to judgment as a matter of law on Plaintiffs' CPRA cause of action because the requested audio and video recordings are undisputedly investigatory materials and therefore exempt from disclosure.

A. *The Issues on Appeal Are Appropriately Before Us for Decision*

Defendants ask us to dismiss Plaintiffs' appeal because their notice of appeal was filed prior to the trial court's entry of judgment and Plaintiffs thereafter did not "rectify the premature notice of appeal, including simply filing a proper and timely second notice of appeal." We decline. Defendants identify no prejudice they suffered as a result of the premature notice and we see no reason to insist on the filing of a second, curative notice of appeal when it is obvious what ruling Plaintiffs sought to challenge on appeal. (Cal. Rules of Court, rule 8.104(d)(2); *In re*

9

*Joshua S.* (2007) 41 Cal.4th 261, 272 ["'[I]t is, and has been, the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced'"].)

Defendants also make a more limited request that we dismiss the appeal only insofar as it is taken from the trial court's ruling on the CPRA claim. They maintain that under former Government Code section 6259, subdivision (c), an order on a CPRA cause of action is reviewable only via petition for extraordinary writ filed within 20 days. Plaintiffs, however, filed their notice of appeal within that timeframe, and we opt in this case to do what other courts have previously done in similar circumstances: resolve the issue in the context of the noticed appeal. (*Coronado Police Officers Ass'n v. Carroll* (2003) 106 Cal.App.4th 1001, 1006 [exercising discretion to hear appeal where public agency filed the notice of appeal within the statutory time period for seeking writ review of a CPRA order]; *Committee to Support Recall of Gascón v. Logan* (2023) 94 Cal.App.5th 352, 372, 378; but see *MinCal Consumer Law Group v. Carlsbad Police Dept.* (2013) 214 Cal.App.4th 259, 265-266 [declining to consider a CPRA issue raised on appeal when the notice of appeal, unlike here, was filed *after* the time permitted under former Government Code section 6259].)

### B.     *Summary Judgment Basics*

"'"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc.,

§ 437c, subd. (c); [citation].)  The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,'" the elements of his or her cause of action.  [Citation.]"  [Citation.]  We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.'  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018[ ].)"  (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.)

> C.     *The City and the Officers Were Entitled to Judgment as a Matter of Law on the Bane Act and Common Law Tort Causes of Action*

The Tort Claims Act (Gov. Code, § 810 et seq.), "requires the presentation of 'all claims for money or damages against local public entities'" to the responsible public entity before a lawsuit is filed.  (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738.)  The term "local public entity" includes a city.  (Gov. Code, § 900.4; *Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 374.)  A claim relating to a cause of action for personal injury or injury to property must be presented to the local public entity "not later than six months after the accrual of the cause of action."  (Gov. Code, § 911.2, subd. (a).[5])

---

[5]     The statute provides, in relevant part: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than six months after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented . . . not

11

Under the Tort Claims Act, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*State of California v. Superior Court (Bodde)* (2004) 32 Cal.4th 1234, 1239, fn. omitted; accord, Gov. Code, § 945.4; see also *City of Stockton*, *supra*, 42 Cal.4th at 738 ["'It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim'"].) "'[T]he filing of a claim for damages "is more than a procedural requirement, it is a condition precedent to plaintiff's maintaining an action against defendant, in short, an integral part of plaintiff's cause of action."' [Citations.]" (*Bodde*, *supra*, at 1240.) Failure to present a timely claim "'"bars the action."' [Citations.]" (*Ibid*.)

Here, Plaintiffs' government tort causes of action accrued on July 22, 2019, the day officers kicked in the front door to their home and searched the premises without a warrant. It is undisputed Plaintiffs did not submit their tort claims to the City until over 11 months later, on June 15, 2020, which is well beyond the January 22, 2020, six-month deadline. It is also undisputed that Plaintiffs never submitted an application to the City for leave to file a claim beyond the six-month deadline.

Plaintiffs' sole counterargument, that the City's response to their belated claim submission was itself untimely, is belied by the record. Under the Tort Claims Act, the City had 45 days to notify Plaintiffs that their claims were untimely or waive any timeliness defense. (Gov. Code, § 911.3, subd. (b) ["Any defense as to the time limit for presenting a claim described in

later than one year after the accrual of the cause of the cause of action."

12

subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented . . .”].)  Forty-five days from June 15 is July 30.  Because the record shows the City's response was sent on either July 28, 2020 (the date on the letter and proof of service) or July 30, 2020 (the date on the envelope), the City did not waive its timeliness defense.

> D.      *The Officers Were Entitled to Judgment as a Matter of Law on the Section 1983 Unlawful Search Cause of Action*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818; accord, *District of Columbia v. Wesby* (2018) 583 U.S. 48, 62-63; *Casey N. v. County of Orange* (2022) 86 Cal.App.5th 1158, 1177.)

In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry: "do the facts alleged show the officer's conduct violated a constitutional right" and was the right "clearly established." (*Saucier v. Katz* (2001) 533 U.S. 194, 201; see also *Hunter v. Bryant* (1991) 502 U.S. 224, 228 [qualified immunity is a question of law, not a question of fact].)  These prongs may be addressed in either order (*Pearson v. Callahan* (2009) 555 U.S. 223, 236), and here it is the first step (conduct violating a constitutional right) that is dispositive.

The Fourth Amendment to the federal Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.)  Although it is well established that searches and seizures inside a home without a

13

warrant are presumptively unreasonable under the Fourth Amendment (*Payton v. New York* (1980) 445 U.S. 573, 585), it is equally well established that warrantless searches are permissible when there are urgent circumstances that make the needs of law enforcement "so compelling." (*Mincey v. Arizona* (1978) 437 U.S. 385, 394.) The United States Supreme Court has identified several such exigencies, and the one most relevant here is the "emergency aid" exception. (*Brigham City v. Stuart* (2006) 547 U.S. 398, 402.)

Under that exception, "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." (*Brigham City*, *supra*, 547 U.S. at 403; accord, *People v. Troyer* (2011) 51 Cal.4th 599, 602; see also *Mincey*, *supra*, 437 U.S. at 392 ["'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency'"].) Officers making such a warrantless entry must have "an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury" (*Brigham City*, *supra*, 547 U.S. at 400), but "when 'police are acting in a swiftly developing situation,' . . . a court must not 'indulge in unrealistic second-guessing'" (*Leaf v. Shelnutt* (7th Cir. 2005) 400 F.3d 1070, 1092 [deputy entitled to qualified immunity and summary judgment on claims arising from entry and search of decedent's apartment]). "Suicidality" has been found to present "a tragically common example of exigent circumstances." (*Winder v. Gallardo* (5th Cir. 2024) 118 F.4th 638, 644.)

There is no dispute that the officers had an objectively reasonable basis to enter and search Plaintiffs' home: they were

14

responding to a dispatch that a caller at Plaintiffs' address was suicidal. (*Rice v. Reliastar Life Ins.* (5th Cir. 2014) 770 F.3d 1122, 1131; *Fitzgerald v. Santoro* (7th Cir. 2013) 707 F.3d 725, 732 [affirming grant of summary judgment in favor of the defendant officers who had "an objectively reasonable belief that they needed to enter without a warrant in order to prevent serious injury" because they had been told a woman had called a police station, sounded intoxicated, and threatened suicide].) The officers who entered Plaintiffs' home did not "need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." (*Michigan v. Fisher* (2009) 558 U.S. 45, 49.) They needed only a reasonable basis for believing that "'a person within [the house] is in need of immediate aid'" (*id.* at 47), which the call, as relayed to them through the dispatch operator, provided. The fact that the call to the Department was determined to be a hoax in hindsight is immaterial. (*Id.* at 49; *Troyer, supra,* 51 Cal.4th at 613.)

The undisputed facts in the summary judgment record also show that the extent of the officers' search (i.e., the degree of intrusion into Plaintiffs' privacy rights) was reasonably circumscribed to the facts known (and unknown) to the officers at the time. The limited search of the two-story premises was initially confined to those places where a suicide victim might be (and the property's underground garage, when the officers learned there was one). Once it was determined there was no one present in the residence, the search expanded only to sporadic and limited efforts to identify the owners or occupants of the residence via documents in plain view and that might have been in view after opening four credenza drawers. These identification efforts were undertaken while the officers were still unsure

15

whether the suicidal caller lived on the premises and might have also yielded information about the identity of the residence's other occupant that they learned about only after arriving on the scene).[6] The officers did not further search the residence when they found information apparently revealing the name of one of the home's occupants, and they were at the location for a total of only approximately 17 minutes—and, during much of that time, were not actively searching for documentation that would reveal the true owner(s) or occupant(s) of the residence. The limited search that the summary judgment record reveals was reasonable as a matter of law in light of the exigency reported and the characteristics of Unit 2 and the complex of which it was a part; the limited search is also far short of what other cases have held to constitute a constitutional violation (*Mincey*, *supra*, 437 U.S. at 393 [four-day warrantless search of the defendant's apartment cannot be justified on grounds of exigent circumstances]; *People v. Boragno* (1991) 232 Cal.App.3d 378, 386-387, 392 [one-minute emergency entry and search did not violate the Fourth Amendment but a second *13-hour* warrantless re-entry and search did]). The officers here were accordingly entitled to qualified immunity as a matter of law and the section 1983 claim fails.

---

[6] Officer Torres also believed identifying the owner or occupants of the residence was necessary to communicate that the forced entry caused damage to the premises.

### E. The City Was Entitled to Judgment as a Matter of Law on the Unlawful Practices and Policies Cause of Action

A local governmental entity is liable under section 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." (*Monell, supra*, 436 U.S. at 691.) To prevail on a section 1983 cause of action against a local government entity, a plaintiff must establish the following: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" (*Oviatt v. Pearce* (9th Cir. 1992) 954 F.2d 1470, 1474, quoting *City of Canton, Ohio v. Harris* (1989) 489 U.S. 378, 389-91; accord, *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829 ["*cities, counties, and local officers* sued in their official capacity [under section 1983] . . . may be held directly liable for constitutional violations carried out under their own regulations, policies, customs, or usages"]; *Casey N., supra*, 86 Cal.App.5th at 1179 ["To sustain her section 1983 claim against the County, Casey was required to prove (1) she was deprived of a constitutional right, (2) the County had a policy which amounted to "'deliberate indifference'" to Casey's constitutional right, and (3) that action taken pursuant to that policy violated Casey's constitutional right"].)

Because, as discussed *ante*, the undisputed facts establish there was no constitutional violation, the City was entitled to summary adjudication on Plaintiffs' *Monell* cause of action.

17

*F.     The City and Patterson Were Entitled to Judgment as a Matter of Law on the CPRA Cause of Action*

"Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.), the [CPRA] was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies.  [Citation.]  Such 'access to information concerning the conduct of the people's business,' the Legislature declared, 'is a fundamental and necessary right of every person in this state.' [Citation.]"  (*Los Angeles County Bd. of Supervisors v. Superior Court (ACLU of Southern California)* (2016) 2 Cal.5th 282, 290.)

The CPRA, however, "does not require the disclosure of . . . [r]ecords of complaints to, or investigations conducted by . . . any . . . local police agency, or any investigatory or security files compiled by any . . . local police agency, or any investigatory or security files compiled by any . . . local agency for correctional, law enforcement, or licensing purpose."  (Former Gov. Code § 6254, subd. (f).[7])  Our highest court has held that "[t]he records of investigation exempted under [former Government Code] section 6254(f) encompass only those investigations undertaken for the purpose of determining whether a violation of law may occur or has occurred.  If a violation or potential violation is

---

[7]     "Subdivision (a) of [Government Code] Section 7923.600 continues the first sentence of former Section 6254(f) without substantive change."  (Cal. Law Revision Com., Staff Memorandum 2018-26, California Public Records Act Clean-Up: Part 5. Specific Types of Public Records (Chapter 1. Crimes, Weapons, and Law Enforcement) (Apr. 9, 2018) (Staff Memo., comment, p. 2).)

detected, the exemption also extends to records of investigations conducted for the purpose of uncovering information surrounding the commission of the violation and its agency." (*Haynie v. Superior Court (County of Los Angeles)* (2001) 26 Cal.4th 1061, 1071; accord, *Williams v. Superior Court (Freedom Newspapers)* (1993) 5 Cal.4th 337, 355.)

Our Supreme Court has also observed that "nothing [in former Gov. Code, § 6254] purports to place a time limit on the exemption for investigatory files. Indeed, a file 'compiled by . . . [a] police agency' or a file 'compiled by any other state or local agency for . . . law enforcement . . . purposes' continues to meet that definition after the investigation has concluded. If the Legislature had wished to limit the exemption to files that were 'related to pending investigations,' words to achieve that result were available. It is not the province of courts 'to insert what has been omitted.' [Citations.]" (*Williams, supra,* 5 Cal.4th at 357; see also *id.* at 355 ["the exemption for law enforcement investigatory files does not end when the investigation ends. While there may be reasons of policy that would support a time limitation on the exemption for investigatory files, such a limitation is virtually impossible to reconcile with the language and history of subdivision (f)"].)

In their letters responding to Plaintiffs' demands for copies of audio and video files relating to the warrantless search of their home, the City and Patterson repeatedly referenced former Government Code section 6254 and the investigation into the hoax suicide call. In their opposition to Defendants' motion and in their supporting statement of material facts, Plaintiffs did not dispute there was a possible crime of making a false claim of a suicide attempt at their home, there was an investigation by the

19

Department into that crime, and the materials they requested were properly included in the investigation's files.  Instead, Plaintiffs disputed only the purported need for an investigation in view of the same-day determination by one of the responding officers that the call was a hoax.  This, however, is the very predicate that establishes the requested materials are investigatory—the requested recordings were obviously material to establishing that an as yet unidentified person made a false police report.  The requested materials were therefore exempt from disclosure as investigatory files and the City and Patterson were entitled to judgment as a matter of law on Plaintiffs' CPRA cause of action.  (See, e.g., *Castañares v. Superior Court (City of Chula Vista)* (2023) 98 Cal.App.5th 295, 305-306 [drone video footage that is part of an investigatory file is "exempt from disclosure"].)

## DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



HOFFSTADT, P. J.


20

WILLIAMS, J.[*]

---

[*] Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.